STATE of South Dakota, Plaintiff
and Appellee,

v.

Michael LANG, Defendant
and Appellant.

No. 14408.

Supreme Court of South Dakota.

Considered on Briefs May 24, 1984.

Decided Aug. 29, 1984.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Richard Braithwaite of Braithwaite Law Offices, Sioux Falls, for defendant and appellant.

FOSHEIM, Chief Justice.

Michael Lang appeals a judgment of conviction entered on a jury verdict against him for three counts of distribution of marijuana with consideration and one count of unauthorized manufacture or distribution of a substance with high potential for abuse. We affirm.

Pursuant to a drug investigation, Michael Sanders, a paid informant, purchased drugs from appellant on four separate occasions. The sheriff and deputy sheriff monitored these transactions by recorders placed on the informant. The purchases were also witnessed by the informant's girlfriend, Karen Huber. Four separate grand jury indictments were returned. The trial resulting in the convictions was held July 21 and 22, 1983.

Appellant presents five issues: (1) Did the trial court abuse its discretion in refusing to grant a continuance, (2) Was it reversible error to try all four indictments together, (3) Did the trial court commit

reversible error by failing to fully admonish the jury prior to one recess, (4) Did the trial court abuse its discretion in allowing Karen Huber to testify and (5) Was the sheriff's testimony concerning the recorded conversations admissible.

On the eve of trial, appellant requested a second continuance on the grounds he could not locate five witnesses and because defense counsel was not ready for trial.[1] His defense rested on alibi testimony that he was with others on the dates of the alleged drug sales.

 A trial may be postponed "upon good cause shown." SDCL 15–11–4. The granting of a continuance is within the sound discretion of the trial court and its rulings will not be disturbed absent a clear showing of abuse of discretion. State v. Rosales, 302 N.W.2d 804 (S.D.1981). The trial court had continued the trial once before for similar reasons. Despite his claim of unpreparedness, appellant produced seven witnesses who testified regarding his whereabouts on the dates of the drug transactions. We conclude there was no abuse of discretion in the trial court's refusal to grant a continuance. Id.

Concerning his claim that it was reversible error to try all four indictments together, appellant has failed to preserve a record. See, SDCL 23A–11–2 (relief from pre-judicial joinder of offenses); SDCL 23A–8–3(6) (request for severance of charges must be made prior to trial).

 For his third issue, appellant relies on SDCL 23A–24–5 which provides:

Jurors must also, at each adjournment of court, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse, among themselves or with anyone else, on any subject connected with the trial, or to form or express any opinion thereon, until the case is finally submitted to them.

1. Appellant's counsel on appeal did not represent him at trial.

At the conclusion of the appellant's testimony a short recess was taken and the court admonished the jury as follows:

THE COURT: Alright, [the court reporter] said he's getting warm up here and his hands are getting sore, so again, I admonish you not to discuss this case among yourselves, with anyone else, nor permit anyone to discuss it with you. With that, we'll be in recess for about five minutes.

Appellant contends that because the court failed to additionally admonish the jury not to form or express any opinions prior to this recess his convictions should be reversed. The trial lasted two full days. Numerous recesses were taken both before and after the five minute recess in question. The trial judge carefully followed all parts of SDCL 23A-24-5 at every other adjournment. There is no indication that this minor omission affected the verdict and a reversal will not be granted. *Kost v. State*, 344 N.W.2d 83 (S.D.1984), *citing, Rosales, supra.*

■ We next consider whether it was reversible error to admit the testimony of the informant's girlfriend, Karen Huber. Her name was not on the grand jury indictment and the State did not formally disclose she would be a witness until the day of trial.

"It is important to note ... the rule ... requiring disclosure of material and exculpatory material applies only to situations where defense counsel discovers after trial that the prosecution had material information that remained undisclosed during the trial. We do not equate late disclosure with suppression, especially where, as here the trial record indicates that defense counsel made use of the information at trial." *State v. Fox*, 313 N.W.2d 38 (S.D.1981), *citing State v. Moves Camp*, 286 N.W.2d 333, 339 (S.D.1979); *See also, California v. Trombetta*, —— U.S. ——, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *State v. Coe*, 286 N.W.2d 340 (S.D.1979); *State v. Church*, 6 S.D. 89, 60 N.W. 143 (1894); *rev'd on other grounds*, 7 S.D. 289, 64 N.W. 152 (1895); Karen Huber's name was listed in the police reports made available to the appellant. Counsel for appellant never requested a witness list from the State. Both the trial court and the State attempted to minimize any possible prejudice to appellant by offering to make Ms. Huber available to appellant's counsel before she testified. Counsel did not take advantage of this opportunity, nor was this given as a reason for the requested continuances. Counsel for appellant extensively cross-examined Ms. Huber during the trial. The State did not offer previously undisclosed evidence at trial. *State v. McKee*, 314 N.W.2d 866 (S.D.1982). In the absence of any showing of prejudice to appellant, we hold the trial court did not abuse its discretion in allowing Karen Huber to testify. See SDCL 23A-13-17.

■ We close this decision with a consideration of appellant's claim the trial court erroneously allowed the sheriff to testify regarding conversations recorded on tape. He claims the tapes themselves, and not testimony, were the "best evidence" of the conversations. SDCL 19-18-2. In *United States v. Gonzales-Benitez*, 537 F.2d 1051, 1053 (9th Cir.1976), *cert. denied*, 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976), the ninth circuit court discussed this question:

Appellants simply misconstrue the purpose and effect of the best evidence rule. The rule does not set up an order of preferred admissibility, which must be followed to prove any fact. It is, rather, a rule applicable only when one seeks to prove the contents of documents or recordings. Fed.R.Evid. 1002. Thus, if the ultimate inquiry had been to discover what sounds were embodied on the tapes in question, the tapes themselves would have been the "best evidence." However, the content of the tapes was not in itself a factual issue relevant to the case. The inquiry concerned the content of the conversations.

*see also, United States v. Rose*, 590 F.2d 232 (7th Cir.1978), *cert. denied*, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979); 5 Weinstein 1002[03] (1976). Here, the issue was what transpired between the appellant

and the informant during the drug transactions. The sheriff monitered the conversations as they occurred and were taped. The fact that the recordings were admitted into evidence does not require they be treated as the *only* admissible evidence of the conversations. "Any witness who heard may testify to words even though they were transcribed or recorded." 5 Weinstein 1002[03], 1002–11 (1976); *see also, U.S. v. Bell,* 651 F.2d 1255 (8th Cir. 1981); *U.S. v. Gonzales-Benitez, supra; U.S. v. Rose, supra.*

We hold there were no prejudicial errors warranting reversal of appellant's conviction. Affirmed.

WOLLMAN, DUNN, and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

Did defendant have a fair trial? Believing that he did not, I would reverse this conviction and accordingly dissent.

1. There was no consolidation of indictments; there was no motion for consolidation; there was no hearing concerning consolidation of indictments; there was no order entered by the court of consolidation. It behooved the state to so move and it did not. It behooved the court to ensure a fair trial. SDCL 23A–11–1 governs. Under this statute, separate indictments or informations should not be joined for trial without an order of the court. In this case, defendant was prejudiced by the consolidated trial. How could defense counsel ask for relief from prejudicial joinder under SDCL 23A–11–2 unless there was joinder in the first instance? Defendant presented different alibi witnesses on different indictments creating an inherent risk that if the jury did not believe one alibi witness, it would tend to discredit all the alibi testimony. *Drew v. United States,* 331 F.2d 85, 88 (D.C.Cir.1964), expressed why accused is possibly prejudiced by a joint trial of offenses:

(1) he may become embarrassed or confounded in presenting separate defenses;

(2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one.

Judicial expediency. Volume. Crises in the courts. It covers the nation like a blanket. It forecloses preparation. It stymies academic input. It stultifies the healthy growth of law. It rips away at considered reflection. Sweet judicial expediency. It tears apart judicial fairness like a lion's paws rip a killed gazelle. It is public enemy #1 to those who elevate qualitative analysis over quantitative analysis. *See* my dissent in *State v. No Heart,* 353 N.W.2d 43, 49 (1984), wherein I elevated the fair administration of justice over efficiency and economy in the courts.

2. There was an admitted lack of preparation before trial evidenced by defense counsel's motion for a continuance (summarily denied) stated on the record as follows:

I had full intent yesterday of interviewing all the witnesses. We had five of them. I don't even know what their full names are. He can't advise me as to what their full names are. I don't know where they are and I don't know who they are.

This was less than twenty-four hours before the trial commenced. Defendant had previously been granted a continuance, but that does not mean that he should not have been entitled to another continuance. Facing four felonies to defend, his attorney openly confessed that he was not ready to go to trial. What confidence must have abound in the defense camp. We are here concerned with a ten-year prison sentence and 3 two-year prison sentences. A continuance of this case would have been in the

best interests of justice. It would not have been in the best interests of expediency or the court calendar. It would not have been in the best interests of statistics in the Unified Judicial System of the State of South Dakota. Accordingly, given a confession such as this by court-appointed counsel, the trial court should have granted a continuance and I would hold that there was an abuse of discretion.

3. The sheriff took the stand (a well-respected man in the county) and testified to the content of three tapes. For what purposes? The state calls it "cumulative testimony" and therefore harmless. The sheriff was permitted, through the use of notes, to testify, and these notes, he admitted, came from the tapes. Objections that this was not the best evidence were promptly made and promptly overruled. The questions propounded to the sheriff went to the contents of the tapes—not to the content of the conversations. True, the three tapes were played to the jury and were difficult to discern but the jury is the finder of the fact, not the sheriff, and the jury should have found the facts as to what was actually said in the tapes. Thus, the questions were objectionable and a violation of the best evidence rule. *Gonzales-Benitez,* cited by the majority opinion, was relied upon heavily by the appellant in his brief and was not listed by the State in its table of authorities. Those who have the academic interest can read this case, as well as *Rose,* also cited by the majority and appellant in support of his appeal. The sheriff might well have monitored the conversations (in the three tapes) as they occurred and as they were taped. This does not give him the right to interpret what the tapes reveal. Therefore, I read these cases to support defendant's position and not the position of the State of South Dakota. The best evidence rule was codified in SDCL 19–18–2. This statute requires proof of contents of a recording by production of the original. Although the trial court knew the original tapes were in court and available, it overruled objections of the defense and permitted the sheriff to testify. This was error. I am dismayed that the Rules

of Evidence, through a series of decisions in this Court, have been seriously eroded. These rules have evolved for the purposes of establishing truth and they are not just technical flim-flam to be discarded at will. *See* my dissents in *State v. Smith,* 353 N.W.2d 338, 345 (S.D.1984); *State v. Wedemann,* 339 N.W.2d 112, 116 (S.D.1983); *State v. Iron Shell,* 336 N.W.2d 372, 375 (S.D.1983). For hearsay is simply not admissible as evidence unless it is found to fall within certain exceptions. *See* SDCL 19–16–4 for the general rule and the exceptions in SDCL 19–16–3, SDCL 19–16–5 through SDCL 19–16–38.

4. Michael Sanders, a confidential informant, testified in this case. Notwithstanding, the trial court permitted the sheriff to testify concerning contact that he, the sheriff, had with Michael Sanders. This testimony, before the jury, and permitted over objection, was that the informant told the sheriff that Mike (Lang) had marijuana to sell. Defense counsel interposed an objection on the grounds of hearsay. What is hearsay? SDCL 19–16–1(3) defines hearsay: "Hearsay is a statement, other than by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Obviously, the sheriff's testimony was not offered simply to prove that this statement was made; no, it was offered to prove the truth of its contents, namely, that Mike Lang had marijuana to sell.

Is the hearsay rule a reality or is it nothing but a legal ghost of the past? Is the rule so rife with exceptions and holes that it is simply meaningless in modern-day decisions? Is it still entitled to some degree of sanctity in the law? Shall we, or shall we not, tolerate convictions and prison sentences based upon hearsay evidence? South Dakota, appellee, would have us believe that appellant is as guilty as Al Capone. But still, were this true, he would be entitled to the protection and correct exposition of the hearsay evidence rule. Defendant did not have a fair trial and I cannot concur in the decision of my learned

brothers on this Court. I would reverse and remand for a new trial.