#25658-a-SLZ

**2011 S.D. 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

SCOTT R. SEMRAD,                          Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE RONALD K. ROEHR
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General          Attorneys for plaintiff
Pierre, South Dakota                and appellee.

MATTHEW S. THEOPHILUS of
Austin, Hinderaker, Hopper,
 Strait & Benson, LLP               Attorneys for defendant
Watertown, South Dakota             and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 10, 2011

OPINION FILED **02/16/11**

#25658

ZINTER, Justice

[¶1.]        After sentencing Scott R. Semrad to six years in the penitentiary, the circuit court incorrectly informed Semrad that he might be required to serve 35% of his sentence before he would be eligible for parole.[1]  After the Department of Corrections subsequently informed Semrad that he would have to serve 60% of his sentence, he petitioned for habeas corpus relief, which resulted in a stipulated resentencing.  The circuit court resentenced Semrad to six years in the penitentiary. But this time the court correctly advised Semrad that he might be required to serve 60% of his sentence before he would be eligible for parole.  Semrad appeals contending that the court's corrective advisement illegally increased his original sentence.  We disagree and affirm.

*Facts and Procedural History*

[¶2.]        In 2007, Semrad pleaded nolo contendere to attempted sexual contact with a child under the age of sixteen in violation of SDCL §§ 22-22-7 and 22-4-1. This was Semrad's second felony conviction.  The circuit court sentenced Semrad to six years in the penitentiary, stating: "It is going to be the sentence of the court that you be imprisoned in the State Penitentiary for a term of six years commencing forthwith. . . .  And that is the sentence of the Court."  The court then advised

---

1.      Semrad contends, and the State does not dispute, that the circuit court's miscalculation occurred because "the court based its statement that [Semrad] was eligible for parole after serving 35% of his sentence upon a mistaken classification of the offense as a nonviolent Class 4 felony, as opposed to the correct classification of the offense as a violent Class 3 offense."  *See* SDCL 24-15A-32 (governing the calculation of parole eligibility for nonviolent and violent felony offenders).

Semrad that he might have to serve 35% of his sentence before being eligible for parole. The court stated:

> The Legislature has passed a law making you eligible for parole before serving that entire sentence. You could be paroled after passage of the following amount of time: . . . . If this is your second felony conviction, when you have served 35% of the sentence.

[¶3.] Sometime after Semrad arrived at the penitentiary, the Department of Corrections (DOC) informed him that he would be required to serve 60% of his sentence before he would be eligible for parole. Although the DOC's advisement was correct, Semrad contended that it "enhanced his sentence," and he filed a petition for habeas corpus. Semrad and the State subsequently stipulated to vacate the judgment and conduct a resentencing.

[¶4.] In 2010, the court resentenced Semrad to six years in the penitentiary. The court specifically explained that it was imposing the same sentence and that its parole eligibility estimate was not part of Semrad's sentence.[2] After imposing sentence, the court then spoke to the issue of Semrad's eligibility for parole. On this

---

2.    The court stated:

> The Court is of the opinion that the sentence that the Court impose[d] originally and that has now been vacated, was a proper sentence, and is still a proper sentence. . . . At the conclusion of your previous sentencing and at the conclusion of this sentence, the court is going to estimate the time which you will be required to serve before you are eligible for parole. That's not a part of this Court's sentence. The Court does that because it's required to make that advisement to you . . . by statute, but it's not a part of the sentence. . . . [I]t is the sentence of the Court that the defendant be imprisoned in the State Penitentiary for a term of six years, commencing forthwith. . . . Mr. Semrad, that is the sentence of the Court.

occasion the court correctly advised Semrad that he might have to serve 60% of his sentence. The court stated:

> The Legislature has passed a law under which you may be eligible for parole after passage of the following amount of time. . . . If this is your second felony conviction, when you have served 60% of the sentence. . . . That's merely the Court's estimate. The Department of Corrections will calculate your actual eligibility.

Semrad now contends that his original sentence was increased by the DOC's and the circuit court's parole eligibility advisements. *See State v. Marshek*, 2009 S.D. 32, ¶ 10, 765 N.W.2d 743, 746 (stating that a sentence cannot be increased in severity after the defendant has begun serving it).

*Decision*

[¶5.] Semrad specifically argues that the circuit court's initial "verbal sentence ordering parole release once [Semrad] had served 35% of his sentence is binding regardless of the DOC's . . . determination that he must serve 60% because a court's verbal sentence controls[.]"[3] Semrad also argues that the court's corrected parole eligibility estimate increased the court's first six-year sentence. Both arguments are premised on the incorrect assumption that the court's first parole eligibility estimate was part of Semrad's sentence.

---

3. *See State v. Munk,* 453 N.W.2d 124, 125 (S.D. 1990) ("It is general settled law in this state that the oral sentence is the only sentence and the written sentence must conform to it."); *State v. Cady,* 422 N.W.2d 828, 830 (S.D. 1988) (same). It is only "when an orally pronounced sentence is ambiguous [that] the written judgment may be relied upon to clarify the ambiguity." *Cady*, 422 N.W.2d at 830.

[¶6.]        Factually, the circuit court's first verbal sentence did not contain language "ordering parole release" once Semrad served a certain percentage of the sentence. Semrad concedes that both advisements were merely parole eligibility "estimates." Thus, the court's first sentence was not a judicial order setting a parole release date.

[¶7.]        We also observe that, as a matter of law, a court's parole eligibility advisement is not part of the court's sentence. The statute requiring parole eligibility advisements, SDCL 23A-27-48,[4] contemplates that the advisement is only the court's estimate made after a sentence is imposed. The statute provides that in any case in which the court "*imposes* a *sentence* that includes imprisonment," the court shall additionally "*state* . . . the *estimated* minimum period the defendant must serve before being eligible for parole[.]" *Id.* (emphasis added). This language does not suggest that the Legislature intended a court's parole eligibility estimate to become part of a defendant's sentence. Indeed, parole eligibility could not be part of a judicial sentence because parole is not a judicial power: it is an executive act.

---

4.      SDCL 23A-27-48 provides:

> In any criminal case in which the court imposes a sentence that includes imprisonment, the judge, in open court, shall state the legal maximum time of imprisonment and the estimated minimum period the defendant must serve before being eligible for parole pursuant to chapter 24-15. Thereafter, the defendant's parole eligibility shall be determined by the Department of Corrections pursuant to chapter 24-15. If the parole eligibility as determined by the Department of Corrections is different from that stated by the court, the Department of Corrections shall notify the sentencing court, prosecuting attorney, and defendant in writing of the difference.

*Roden v. Solem*, 411 N.W.2d 421, 422 (S.D. 1987*). See also Boehrns v. S.D. Bd. of Pardons and Paroles,* 2005 S.D. 49, ¶ 7, 697 N.W.2d 11, 13 (stating that parole is "an executive branch function" and "[a]s such, [a] sentencing court's [incorrect] opinion on parole classification [is] not determinative"); *Turner v. Weber,* 2001 S.D. 125, ¶ 8 n.1, 635 N.W.2d 587, 590 n.1 (noting that although the defendant "was misinformed as to his parole eligibility date by the trial court," the correct parole eligibility date was controlled by statute).

[¶8.]     Because parole eligibility is not part of a defendant's sentence, we have recognized that in other contexts judicial acts delaying parole eligibility do not increase a defendant's sentence. *State v. Puthoff*, 1997 S.D. 83, ¶ 7, 566 N.W.2d 439, 442 (providing that defendant's "sentence" was not increased because the addition of the words "separate transactions" to the written sentence only affected defendant's parole eligibility); *State v. Sieler,* 1996 S.D. 114, ¶ 13, 554 N.W.2d 477, 481 ("Sieler's sentence was not increased by the words 'separate transaction,' only his parole eligibility is affected by these words."). Consistent with these cases and our legislative and constitutional framework, we conclude that neither the DOC's administrative advisement nor the circuit court's corrected parole eligibility estimate increased Semrad's sentence.

[¶9.]     Semrad also contends that the DOC failed to follow SDCL 23A-27-48. He relies on the part of the statute providing: "If the parole eligibility as determined by the Department of Corrections is different from that stated by the court, the Department of Corrections shall notify the sentencing court, prosecuting attorney, and defendant in writing of the difference." *See id.* We have not, however, been

directed to record evidence reflecting that the DOC failed to provide this notice. Moreover, Semrad fails to recognize that SDCL 23A-27-48 no longer applies to defendants sentenced in South Dakota courts. That statute was the mandate for both the circuit court's initial obligation to make parole estimates and the DOC's obligation to give parole discrepancy notices. But SDCL 23A-27-48 only applied to parole eligibility determinations under "SDCL ch. 24-15," a chapter of the code dealing with old system offenders sentenced before July 1, 1996. *See* SDCL §§ 24-15A-1, -3. Because Semrad was sentenced after 1996, he was a new system offender and his parole eligibility was determined under SDCL ch. 24-15A, a chapter not mentioned in SDCL 23A-27-48. Therefore, SDCL 23A-27-48 did not require an initial parole estimate by the court or a discrepancy notice by the DOC, and Semrad's discrepancy notice claim is without merit.

[¶10.]      Affirmed.

[¶11.]      GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and SEVERSON, Justices, concur.